UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THE FEDERATION OF BANGLADESHI
ASSOCIATIONS IN NORTH AMERICA, INC. d/b/a/
"FOBANA," a District of Columbia Corporation,

                       Plaintiff,

      -against-

BANGLADESHI AMERICAN FRIENDSHIP
SOCIETY OF NEW YORK, INC., a New York
Corporation, SHAH NAWAZ, an individual,
FIROZ AHMED, an individual, MOHAMMAD
HOSSAIN KHAN, an individual, KAZI SAKAWAT
HOSSAIN AZAM, an individual, MOHAMED ALI
IMAM SIKDER, an individual, ATIQUR RAHMAN
EUSUFAZI, an individual, XYZ Corporations 1-10
fictitious entities and JOHN DOES 1-10 fictitious
individuals,

                      Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
19-CV-3399 (RRM) (SMG)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

Plaintiff, The Federation of Bangladeshi Associations in North America, Inc. d/b/a/ FOBANA ("The Federation"), brings this action alleging trademark infringement, unfair competition, and false designation under the Lanham Act, 15 U.S.C. § 1114, *et. al.*; unfair competition under state consumer protection laws; corporate identity theft; common law trademark infringement, tortious interference, and individual liability against Defendants Bangladeshi American Friendship Society of New York, Inc. (the "Friendship Society"), Shah Nawaz, Firoz Ahmed, Mohammad Hossain Khan, Kazi Sakawat Hossain Azam, Mohamed Ali Imam Sikder, Atiqur Rahman Eusufazi, XYZ Corporations 1–10 fictitious entities and John Does 1–10 fictitious individuals (collectively "Defendants"). Defendants now move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants also move to

direct the United States Patent and Trademark Office to cancel trademark registration No. 3,435,038 ("FOBANA"). For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part and Defendants' petition to cancel the trademark registration No. 3,435,038 is denied.

## BACKGROUND

### I. Relevant Facts

Unless otherwise noted, the facts herein are drawn from the Amended Complaint ("Am. Compl.") and accepted as true for the purposes of this Order.

The Federation is a non-profit corporation whose mission is to strengthen ties between North America and Bangladesh. (Am. Compl. (Doc. No. 19) ¶ 25.) The Federation advises other associated not-for-profits; organizes conventions for cultural or educational purposes; conducts charitable fundraising services; and provides association services and trade association services to promote the interests of the Bangladeshi community in North America. (*Id.* ¶ 33.) Currently, The Federation has over 60 member associations from around the United States and Canada. (*Id.* ¶ 37.)

The Federation was formed in 1995 and incorporated in D.C. on December 4, 2007. (Am. Compl. ¶¶ 26–27.) A few months prior, on September 18, 2007, a trademark registration application for the mark "FOBANA" was filed with the United States Patent and Trademark Office ("USPTO"). (Am. Compl. ¶¶ 28–30.) The 'FOBANA' trademark was registered effective May 27, 2008. (Am. Compl. ¶ 31)

On March 30, 2009, Defendant Mohamed Ali Imam Sikder instituted a cancellation action before the USPTO to cancel the registration of "FOBANA." (Am. Compl. ¶ 47.) The cancellation action was dismissed with prejudice on July 17, 2009. (Am. Compl. ¶ 48.) Then,

on June 14, 2013, the USPTO granted incontestability to the registration of "FOBANA." (Am. Compl. ¶ 49.)

In addition to the trademark "FOBANA," The Federation claims common law rights to the marks "FEDERATION OF BANGLADESHI ASSOCIATIONS IN NORTH AMERICA," "FEDERATION OF BANGLADESHI ASSOCIATIONS IN NORTH AMERICA FOBANA," and their logo: (*Id.* ¶ 6.) The Federation has consistently used its trademarks in interstate commerce for all aspects of its mission. (*Id.* ¶ 35.)

For the past 33 years, The Federation has held an annual convention in different states and provinces around the United States and Canada. (*Id.* ¶ 38.) The 2019 convention was scheduled to be held on August 30th and 31st and September 1st, 2019, in Long Island, New York, and the 2020 convention was scheduled to be held in Dallas, Texas. (*Id.* ¶¶ 40, 46.) The Federation's consumers include, but are not limited to, the general public, its sponsors, and its member associations. (*Id.* ¶ 43.)

The Friendship Society created and scheduled a competing convention entitled "Fobana Convention 33rd Fobana Convention 2019" and "Fobana Convention 2019 at NY LaGuardia Marriott" to take place in New York on the exact same days as The Federation's convention. (Am. Compl. ¶ 50.)[1] Through the convention, the Friendship Society claimed they would provide services that include seminars, meetings and conferences to promote the interests of the Bangladeshi community and provide cultural or educational services. (*Id.* ¶ 52.) The Friendship

---

[1] The Bangladeshi American Friendship Society of New York Inc. was not incorporated until July 12, 2019. (Am. Compl. at ¶ 55.). Thus, any acts alleged to have taken place prior to July 12, 2019, were committed by Shah Nawaz, Firoz Ahmed, Mohammad Hossain Khan, Kazi Sakawat Hossain Azam, Mohamed Ali Imam Sikder, and Atiqur Rahman Eusufazi in their individual capacities. (Am. Compl. at ¶ 67.)

3

Society has allegedly used The Federation's marks in reference to their services. (*Id.* ¶ 53.) The Federation has never granted the Friendship Society permission or a license to use its trademarks. (*Id.* ¶ 54.) The Federation claims it learned of the Friendship Society's illegal use of its trademarks when The Federation's sponsors from prior conventions refused to sponsor its 2019 convention due to confusion between the two entities. (*Id.* ¶ 56.)

On January 7, 2019, The Federation sent a cease and desist letter to the Friendship Society, demanding that it cease its illegal use of The Federation's trademarks and immediately remove all reference to "FOBANA" from their advertising materials.[2] (Am. Compl. ¶ 57.) The Friendship Society ignored this demand. (Am.Compl. ¶ 58.) Subsequently, the Friendship Society contacted at least two of The Federation's sponsors to request that they cease supporting The Federation and instead provide funds to the Friendship Society. (*Id.* ¶ 59.) The Federation claims that at least six sponsors have indicated they are confused regarding the "true FOBANA" and are concerned that they are not supporting the "official" FOBANA. (*Id.* ¶ 60.)

The Federation sent a second cease and desist letter to the Friendship Society on May 15, 2019.[3] (Am. Compl. ¶ 61.) The Friendship Society also ignored this demand. (*Id.*) The Friendship Society began using The Federation's logo and corporate name in press releases, on social media websites, and in videos released to the public. (*Id.* ¶ 62.)

## II. The Federation's Claims

In the Amended Complaint, The Federation asserts Defendants are liable for: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) unfair competition and

---

[2] The first demand letter was addressed to Shah Nawaz at 71-16 35th Avenue, Jackson Heights, New York 11372 – the same address later used by Defendant corporation, Bangladeshi American Friendship Society of New York Inc. (*See* Certification of Lori P. Hager, Esq. in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Hager Cert.") (Doc. No. 28-5) ¶ 14, Exhibit 13 (Doc. No. 28-19).)

[3] The second demand letter was addressed to Mohammad Hossain Khan, Bangladeshi American Friendship Society of New York, Inc., 94-36, 238 Street, Floral Park, New York 10462. (*See* Hager Cert. ¶ 22, Exhibit 21 (Doc. No 28-27).)

false designation under the Lanham Act, 15 U.S.C. § 1125(a); (3) common law trademark infringement; (4) corporate identity theft under the Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-s; (5) unfair competition under the Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349; (6) tortious interference with existing and prospective economic relations; and (7) individual liability. (Am. Compl. ¶¶ 72–124.) The Federation seeks injunctive relief, costs, fees, pre- and post-judgment interest, compensatory, treble and punitive damages. (*Id.* ¶¶ 8–9.)

### III. The Instant Motion

Defendants now move to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6). To support their Rule 12(b)(1) motion, Defendants argue that because The Federation's corporate status was revoked at the time it commenced this action, The Federation lacks standing to sue, as it could not suffer injury when its corporate status was revoked. (Mot. Dismiss (Doc. No. 27-1) at 7.) Defendants further assert that The Federation is not the registrant of the trademark because it was not incorporated at the time of registration, and so The Federation lacks standing to sue for trademark infringement. (*Id.*) The Federation responds that the reinstatement of their corporate charter relates back to the date of revocation, giving them standing to sue for events occurring in the interim period, and, further, The Federation has standing to sue for trademark infringement because it is a continuing wrong. (Plaintiff's Memorandum in Opposition ("Pl.'s Mem.") (Doc. No. 28-3) at 12.) The Federation argues that the registration of a trademark cannot be cancelled unless there is evidence of fraud, which is not the case here, and that the registration error is a curable defect. (*Id.* at 13–14.)

In their motion to dismiss pursuant to Rule 12(b)(6), Defendants argue that The Federation lacks the capacity to sue for alleged wrongs committed during the revocation period.

5

(Mot. Dismiss at 7.) Defendants also assert that The Federation had abandoned the trademark. (*Id*.) Defendants further argue that the logo is not protectable under either the Lanham Act or New York common law, so The Federation's trademark infringement claims with respect to that mark must be dismissed. (*Id*.) Defendants also claim that The Federation has failed to plead sufficient facts with respect to each mark and failed to identify the specific mark or marks which Defendants allegedly infringed. (*Id*.) The Federation maintains that it has consistently used all of its trademarks and has not abandoned them. (Pl.'s Mem. at 14–15.) Further, The Federation rejoins that is has properly pled trademark infringement. (*Id*. at 17.)

In further support of their Rule 12(b)(6) motion, Defendants claim that the alleged unfair competition under N.Y. Gen. Bus. Law § 349 must fail because it does not allege conduct that is harmful to public health or safety. (Mot. Dismiss at 8.) Defendants assert that The Federation's theft of corporate identity claim also fails because N.Y. Gen. Bus. Law § 380-s is restricted to consumer credit reporting and is inapplicable to the allegations contained in the amended complaint. (*Id*.) With respect to The Federation's claim of tortious interference with existing and prospective economic relations, Defendants argue that The Federation fails to identify any specific relationship with which Defendants have allegedly interfered. (*Id*.) Moreover, Defendants assert that The Federation's claim of individual liability amounts to an impermissible group pleading and contains none of the relevant factors that would allow for the piercing of the corporate veil, and so this claim should be dismissed. (*Id*.) The Federation responds that it has properly pled unfair competition, including bad faith on the part of the Defendants, as well as corporate identity theft, tortious interference, and individual liability. (Pl.'s Mem. at 17–20.) Finally, The Federation argues that Defendants are not entitled to the "extraordinary relief" of

6

cancellation of the FOBANA trademark, because they do not brief the issue in their filings. (*Id.* at 22.)

## DISCUSSION

### I. Defendants' Rule 12(b)(1) Motion

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted). A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1) because a party must have standing in order to invoke the Court's power to adjudicate the case under Article III. *See McCrory v. Adm'r of Fed. Emergency Mgmt. Agency*, 600 F. App'x 807, 808 (2d Cir. 2015) (citing *Makarova*, 201 F.3d at 113). To survive a motion to dismiss for lack of standing, the plaintiff must allege facts that, when accepted as true, "affirmatively and plausibly suggest that it has standing to sue." *Bank v. CreditGuard of Am.*, No. 18-CV-1311 (PKC) (RLM), 2019 U.S. Dist. LEXIS 49363, at *6-7 (E.D.N.Y. Mar. 22, 2019) (internal quotations and citations omitted.) To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but

jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted). Moreover, where subject matter jurisdiction is contested, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits. *See Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *accord Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

### a. Evidence Outside the Pleadings

The Court will consider the parties' submitted evidence regarding standing, which is as follows. Defendants include as an exhibit a report from the Department of Consumer and Regulatory Affairs in D.C., which shows that as of June 26, 2019, The Federation's charter had been revoked. (Declaration of Humayun Siddiqui ("Siddiqui Declaration") (Doc. No. 27-2) ¶ 4, Exhibit C (Doc. No. 27-5).) The Federation admits that on April 1, 2018, "due to a clerical error," The Federation failed to file its Two-Year Report with the District of Columbia. (Declaration of Mir H. Chowdhury in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Chowdhury Dec.") (Doc. No. 28-4) ¶ 19.) This biennial report is required under D.C. Code § 29-102.11(a)(8); failure to submit a complete report as required in that subsection results in the administrative dissolution of the corporation under D.C. Code § 29-106.02. The Federation reports that upon learning of this oversight, it "immediately filed its Two-Year Report and paid the $130 filing fee," but neglected to pay the required reinstatement fee, so the charter was not reinstated on that date. (*Id.* ¶¶ 20–21.) The Federation paid all outstanding fees on July 12, 2019, and the charter was reinstated. (*Id.* ¶ 23; *see also* Hager Cert. ¶ 10, Exhibit 9 (Doc. No. 28-15).)

8

To show that it has standing to sue for trademark infringement, The Federation also submits as an exhibit various fliers and advertising materials promoting the "North American Bangladesh Convention" ("NABC") from 1993 through 1999 and the "FOBANA Convention" from 2001 through 2017, (Hager Cert. ¶¶ 2, 4, Exhibits 1, 3 (Doc. Nos. 28-6, 28-8)), as well as a letter declaring that "Federation of the Bangladeshi Associations of America (FOBANA)" was incorporated in D.C. on September 28, 1995, (Hager Cert. ¶ 3, Exhibit 2 (Doc. No. 28-7)).  The Federation also encloses registration information for the FOBANA trademark, which was registered under trademark registration No. 3,435,038, effective May 27, 2008, by The Federation of Bangladeshi Associations in North America.  (Hager Cert. ¶ 5, Exhibit 4 (Doc. No. 28-10).)  Finally, the Federation encloses applications to register "FEDERATION OF BANGLADESHI ASSOCIATIONS IN NORTH AMERICA FOBANA," (Serial No. 88533127), and "FOBANA," (Serial No. 88533125), both filed on July 24, 2019 by The Federation of Bangladeshi Associations in North America.  (Hager Cert. ¶¶ 24–25, Exhibits 23, 24 (Doc. Nos. 28-29, 28-30).)

### b. Standing to Sue for Events Occurring While Charter was Revoked

Under the Law of Washington D.C., a corporation is automatically deemed dissolved when its corporate status is revoked.  D.C. Code § 29–301.86(c).  A corporation whose corporate status was revoked and later reinstated "cannot establish standing retroactively as a corporation with respect to claims based on events and injuries that occurred during the revocation period." *Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 85–86 (D.D.C. 2008).  That is because a dissolved entity cannot suffer an injury as required to assert Article III standing.  *See id*. at 85.

Here, The Federation's corporate charter was revoked effective April 1, 2018, and The Federation was placed into administrative dissolution.  The Federation's corporate charter was

9

then reinstated on July 12, 2019.  The Federation therefore lacks standing to sue based on the events of the period of April 1, 2018, through July 12, 2019.  The Amended Complaint alleges that the Friendship Society, though it was not incorporated until July 12, 2019, courted sponsors for their competing FOBANA convention and ignored two cease and desist letters that The Federation sent in January 2019 and May 2019.  During that time, The Federation claims that the Friendship Society was using the Federation's logo, name, and trademarks to advertise this competing convention and create confusion about the "true FOBANA."  (Am. Compl. ¶¶ 56–61.)  The Federation's allegations are thus confined to the period of time during which it was in administrative dissolution, and so the complaint in its entirety is dismissed for lack of standing.

      The Federation argues that it has standing to sue for trademark infringement that occurred both before and after July 12, 2019, because "trademark infringement is a continuous wrong and, as such, gives rise to a claim for relief so long as the infringement persists."  (Pl.'s Mem. at 12, quoting *Brunswich Corp. v. Spinit Reel Co.*, 832 F. 2d 513, 526 (10th Cir. 1987)).  *Brunswich*, which is not binding on this Court, addresses the issue of calculating damages under the Lanham Act for continuing wrongs, not whether a continuing wrong such as trademark infringement conveys standing.  Without further support for this proposition, The Federation asserts in its briefing that the trademark infringement persists "to this day," and, as such, "Defendants will be liable for their actions at least from the reinstatement, July 12, 2019, to the present."  (Pl.'s Mem at 12.)  Even assuming this is true, The Federation still lacks standing to sue for the alleged trademark infringement because it has failed to demonstrate by a preponderance of the evidence that it is the registrant of the FOBANA trademark.

### c. Standing to Sue for Trademark Infringement

Only a "registrant" may bring a civil action for trademark infringement under Section 32(1) of the Lanham Act. 15 U.S.C. § 1114(1) ("Any person who shall, without the consent of the registrant . . . [commit any of several infringement offenses] shall be liable in a civil action by the registrant for the remedies hereinafter provided.") The term "registrant" is defined to include the owner of the trademark who requested registration of its trademark, as well as the "legal representatives, predecessors, successors, and assignees" of the owner/registrant. 15 U.S.C. §§ 1051, 1127. As explained in *Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 105–06 (E.D.N.Y. 2012):

> The Lanham Act provides that: "The owner of a trademark used in commerce may apply to register his or her trademark under this chapter on the principal register hereby established…." 15 U.S.C. § 1051(a)(1). Nevertheless, trademark ownership rights go to the "first-to-use, not [the] first-to-register." 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 16:18 (4th ed.2010). Such rights "develop when goods bearing the mark are placed in the market and [are] followed by continuous commercial utilization." *Buti v. Perosa, S.R.L.*, 139 F.3d 98, 103 (2d Cir.), *cert. denied, Impressa Perosa, S.R.L. v. Buti*, 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 57 (1998) (internal quotations omitted).

"[T]he mere fact that the entity named as applicant in the application did not exist in law as of the application filing date does not ipso facto render the application void [] so long as the application was in fact filed, albeit in an incorrect name or with an incorrect entity designation, by the proper person, i.e., the commercial enterprise which owned the mark or which was entitled to claim a bona fide intention to use the mark as of the application filing date." *Accu Personnel Inc. v. Accustaff Inc.*, 38 U.S.P.Q.2d 1443 (TTAB 1996); see also *Argo & Co., Inc. v. Spring, et. al*, 198 U.S.P.Q. 626 (TTAB 1978) (the applicant's misidentification as a corporation while it was a non-existent entity was a "curable defect"). However, where "there were two legal entities in existence, and the application was filed by the wrong one," this is "a defect

11

which cannot be cured" and which renders the application void. *Great Seats, Ltd. v. Great Seats, Inc.*, 84 U.S.P.Q.2D (BNA) 1235, 1242 (TTAB 2007).

Defendants maintain that because The Federation did not exist as a corporation until three months after the trademark application for "FOBANA" was filed, it therefore could not have been the actual registrant of the trademark, and so does not have standing to sue. The application for the trademark "FOBANA" was filed on September 18, 2007. The Federation commenced its status as a corporation on December 4, 2007. The Federation argues that it existed under a different entity name, "The Federation of Bangladeshi Associations *of* North America, Inc.," at the time it registered the trademark "FOBANA." (Chowdhury Dec. ¶¶ 4–13.) The Federation of Bangladeshi Associations *of* North America was incorporated in D.C. in 1995. (*Id*. ¶ 9.) The Federation claims that it registered the FOBANA trademark under its new name in September 2007 and incorporated as "The Federation of Bangladeshi Associations *in* North America" in December 2007, "to clarify the name change." (*Id*. ¶ 15.) The Federation, apparently in an attempt to cure the defect of having registered the FOBANA trademark under the name of a corporation that had not yet been formed, has filed new applications with the USPTO for the "FOBANA" and "Federation of Bangladeshi Associations in North America FOBANA" marks, but the USPTO has not, to date, granted the trademarks to The Federation.

The Federation does not present sufficient evidence to show that it, rather than The Federation of Bangladeshi Associations of North America, is the owner of the FOBANA mark or that it is a successor to that corporation. The Federation does not present evidence, for example, of a transfer of rights or good will between The Federation of Bangladeshi Associations of North America and The Federation, nor is there evidence that The Federation of Bangladeshi Associations of North America changed its name, merged its assets with The Federation, or filed

12

for voluntary dissolution. *See Great Seats, Ltd.*, 84 U.S.P.Q.2D (BNA) at 1242 (rejecting respondent's assertion that it was either a successor to, or a "continuous, single entity" with, the prior owner of the trademark because the respondent corporation could not show evidence of a transfer of rights or good will between the corporations or the dissolution of the earlier corporate form.) Though The Federation asserts that they are the same entity as The Federation of Bangladeshi Associations of North America, the record suggests they may be distinct entities. Absent evidence that "affirmatively and plausibly" suggests that The Federation is the registrant of the FOBANA trademark under the Lanham Act, The Federation has failed to meet its burden under Rule 12(b)(1) to demonstrate that it has standing to sue for trademark infringement under that Act. Accordingly, The Federation's claim of trademark infringement under the Lanham Act must be dismissed for lack of standing.

## II. Petition for Trademark Cancellation

Defendants also move for cancellation of the FOBANA trademark, though they present no arguments in favor of cancellation in their briefing. Pursuant to § 37 of the Lanham Act, "[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part . . . and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. This provision has been held to grant the courts authority concurrent with that of the USPTO to conduct cancellation proceedings pursuant to section 14 of the Lanham Act, 15 U.S.C. § 1064. *Mears v. Montgomery*, No. 02-CV-0407 (BSJ) (MHD), 2004 WL 964093, at *12 (S.D.N.Y. May 5, 2004). "Congress has provided that all questions in respect to a registered trade-mark may be determined in one proceeding, thus preventing vexatious and harassing litigation as well as saving time, expense and inconvenience to the parties and to the courts and Patent Office

tribunals." *Simmonds Aerocessories Limited v. Elastic Stop Nut Corp.*, 257 F.2d 485, 491 (3d Cir. 1958).

Here, The Federation alleges that Defendants instituted a cancellation action before the USPTO in 2009 regarding the "FOBANA" mark, which was dismissed with prejudice. (Am. Compl. ¶¶ 47-48.) Then, on June 14, 2013, the USPTO granted incontestability to the registration of the "FOBANA" mark. (*Id.* ¶ 49.) Given that review of the "FOBANA" mark has already been completed by the USPTO, this Court will not disturb the USPTO's determination.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that the Court grants Defendants' motion to dismiss The Federation's claims in their entirety and it is further ORDERED that the Court denies Defendants' petition for cancellation of the "FOBANA" trademark.

SO ORDERED.

Dated: Brooklyn, New York  
       September 28, 2020

*Roslynn R. Mauskopf*

_____  
ROSLYNN R. MAUSKOPF  
Chief United States District Judge